Swing, J.
This case is in this court on appeal, and, briefly stated, is an action by the plaintiff, a taxpayer of the City of Cincinnati, on behalf of said city.
The city solicitor of said city refused to bring said action, although requested to do so. The gist of plaintiff’s action is, that the defendants, August Hermann, John Prey, John B. Washburn and G-eorge T. Sterritt, as members of the board of administration of the City of Cincinnati, and the City of Cincinnati, are about to enter into a contract with the defendants, Johnson, Grover, Hempe, Bussell and Wilcox, for the construction and operation of a certain street railroad route in said city, known and designated by the ordinance of said city establishing said route as Route No. 25, when, at the same time, plaintiff charges that the bid of said Johnson, and other defendants, did not propose to carry passengers at the lowest rates of fare, and he therefore asks that said parties may be enjoined from entering into said contract.
The defendants, Johnson, G-rover, Hempe, Russell and Wilcox, filed an answer, which, while it contains a great many allegations pertaining to the good faith of plaintiff, and of his right to maintain said action, in effect put in issue what we have heretofore said was the gist of plaintiff’s action, and this was the real issue tried before us, although other matters were heard and passed upon during the trial, and they will not be further referred to here. Neither the members of said board of administration, nor the City of Cincinnati filed answers.
The main facts disclosed upon the trial are about as follows:
On December 20, 1892, said city passed an ordinance, No. 418, establishing a street railroad route, No. 25, partly *534 within and partly without said city. It provided that said railroad should be a double track electrical street railroad, with a single or double trolley, and the grant to operate the same was to be for a period of twenty-five years. It further provided that the city clerk of said city should advertise for sealed proposals to construct and operate said railroad at the lowest rates of fare; that such proposals should specify the rates of single cash fare, the number of commutation tickets, in packages, to be sold for one dollar, the number for fifty cents, and the number for twenty-five cents, and should be filed with the board of administration of said city by 12 o’clock noon of the third day of March, 1893. The ordinance further provided that each bidder should accompany his bid with a good and sufficient bond, to the satisfaction of said board of administration, in the sum of $25,000, as liquidated damages, that he, -or they would, if awarded said grant of said route, enter into a contract therefor within ten days from and after the passage of an ordinance granting such right, and would give a good and sufficient bond, to the satisfaction of said board of administration, in the sum of $50,000, liquidated damages, conditioned that he, or they, would comply with the terms of said ordinance and the grant in pursuance thereof. As provided by said ordinance, advertisement was duly made for proposals to construct and operate said route.
And in response to said advertisement, four bids were received.
Charles H. Kilgour bid to carry passengers at five cents for single fare, and commutation tickets in packages at same rate. It was the highest bid, and need not be further considered here.
Orris P. Cobb bid to carry passengers as follows: Single fare, three cents; forty for one dollar; twenty for fifty cents, and ten for twenty-five cents.
Simeon M. Johnson bid to carry passengers as follows: *535 Single fare, four cents; thirty-six tickets for one dollar; eighteen tickets for fifty cents, and nine tickets for twenty-five cents.
The defendants, Johnson and others, bid to carry passengers as follows: Single fare without a seat three cents; with a seat five cents; twenty-five tickets for one dollar; twelve tickets for fifty cents, and six tickets for twenty-five cents. In each instance passenger to be entitled to a comfortable seat.
The bids were referred to a committee of the whole, which committee referred the bids to the Corporation Counsel, with the request that he give his opinion on the following questions:
“First. — Are the bids received in conformity with the statute and the ordinance establishing the route, and are they correct as to all formalities ?
“Second. — Can this board require a bidder or bidders to show whether or not his or their bid was made in good faith, and as to their ability to carry out the contract if awarded ?
“Third. — Can this board reject any of the bids, and upon what grounds, or must award be made to person or persons agreeing to carry passengers át lowest rates of fare?
“Fourth. — Can this board require a certain bidder or bidders before award is made to file necessary consents of abutting owners, and if he or they are unable to do so, can his or their bid be rejected and others considered?”
The Corporation Counsel, on March 11, answered said communication, and, after considering the bid and bond of C. H. -Kilgour, proceeds as follows as to the bids of John-' son and Cobb:
Mr. Simeon M. Johnson proposes ‘ ‘ for himself and othersf to construct and operate Street Railroad Route No. 25, in accordance with the provisions of ordinance No. 218 (an or-1 dinance for change of grade of Bishop street), establishing said route. ’ ’ The epidemic character of this trouble here *536 attracts attention. In the bond accompanying the bid the correct^ number “418” appears. Another informality appears in this, that he recites in the body of the bid that he proposes for himself and others, but signs simply his own name, “Simeon M. Johnson.” And the bond is conditioned that Simeon M. Johnson, “bidder for the right to construct, etc.”
Under his bid the grant, it seems to me, must be made to Simeon M. Johnson and the others for whom he proposes, who may be one or one hundred; but if such grantees fail to contract, there could be no recovery on the bond, for it is conditioned for Simeon M. Johnson, bidder, and nobody else.
For these reasons I regard his bid as informal.
Orris P. Cobb, in like manner, proposes ‘ ‘ for himself and associates,” the words “for himself and associates” having been written in after the remainder of the bid had been prepared in typewriting. He signs merely his own name, “Orris P. Cobb,” and the bond is conditioned for “Orris P. Cobb, bidder.”
Under the peculiar circumstances surrounding this bidding, I ought to call the attention to the fact that the bonds of Mr. Cobb and of Mr. Johnson were certainly prepared by the same person. This is shown by the fact that the written conditions of the respective bonds are in precisely the identical language, which could not possibly be if one bond had not been copied from the other.
The Corporation Counsel reported that the bid of defendants, Johnson and others, was in due form.
His answer to the second and third questions was as follows:
“I will undertake to answer both questions together. It is evident that if the award must be to the lowest bidder, although the city authorities making the grant are satisfied that he can not or does not intend to build the road, it *537 would be practicable for parties so disposed to prevent the construction of any new route. By putting in a sufficient number of low sham bids they can delay the construction of the route indefinitely. That this will be done whenever it suits their interests is shown by the city’s experience with some persons who habitually trample upon all law with the abandon of a thoroughbred anarchist when it suits their interests. Fraud is said to vitiate everything in law. A bid not in good faith is a fraudulent bid, and, therefore, is no bid at all. * * * I am of opinion, therefore, that your board has the right to require bidders to show whether their bids were made in good-faith, and if satisfied that any such bids were not made in good faith, you have the right to make the award to the next lowest bidder. Your board may also, without assigning any reason, reject all bids, and, with the approval of the board of legislation, there may be a re-advertisement for bids. ” * * *
In conclusion the corporation counsel said;:
“Although I regard the bids of Messrs. Cobb, Johnson and Kilgour informal, for the reasons above stated, I would suggest that all bidders be cited to appear before your board and examined touching the good faith of their respective bids. If your board should be satisfied that the lowest bids were in good faith, in view of the informalities therein above stated, it might be well to re-advertise for bids.”
Afterwards the committee of the whole made a report to the board of administration, in which they say:
“We report and find that the within bid of C. H. Kilgour, of Simoon M. Johnson for himself and others, and of Orris P. Cobb for himself and associates, are, in our judgment, not valid bids for said right to construct and operate said route, for the following, among other reasons, which we find to exist, viz.: Neither of said last named three proposals are made in accordance with law and the said ordinance establishing said route; neither of said so-called proposals is accompanied by a valid bond properly conditioned for the performance thereof by the said proposers respectively, as required by said ordinance; neither of said respect *538 ive proposals was, in the judgment of the committee, made in good faith on the part of said respective proposers, and your committee is further of the opinion, taking into consideration that the conditions of the bonds of Messrs. Cobb and Johnson are alike, and all other circumstances, there was and is collusion as well as bad faith in the proposition and representation of said bids of Cobb and Johnson.
“Your committee therefore recommends that the bids of C. H. Kilgour, Simeon M. Johnson for himself and others, and Orris P. Cobb for himself and associates, be rejected, and not be considered.
“We do further ascertain and find that the bid of the-said A. L. Johnson, etc., is a valid bid, and conforms to requirements of the law and ordinance; that said last mentioned bid is the only valid bid received, and is therefore-the lowest bid made for the right to construct and operate said proposed street railroad, and that said bidders last aforesaid bid and agree to carry passengers on said route at the lowest rates of fare offered, and that their bid is fair and reasonable, and that said persons last named are entitled to have said right to construct and operate said Street Railroad Route No. 25 awarded them and the grant therefor. ‘ ’
The board of administration did not call before it. as recommended by the corporation counsel, the different bidders and make any inquiries concerning their bids and the bonds accompanying them. As far as the evideuce showed, their action was formulated by and grounded upon the bids and the bonds accompanying the same. At this point it might be -well to say that Simeon M. Johnson, before any action was taken by the board, and when his attention was called to the fact that in his bid he had mentioned the ordinance as “218,” he offered to the board to correct the same by inserting the correct number, to-wit, “418.”
Upon these facts, was the board of administration justified in rejecting the bids of Cobb and Johnson, and accepting the bid of Johnson and his associates?
We have no doubt but what the board would have the *539 right to reject a bid if they found it to be a frivolous, a sham or a fraudulent bid.
It would be impossible to say just what facts would be necessary in all cases to be shown in order to constitute bids of either of these classes, although bids which might fall within either of these designations can easily be imagined; but these bids were not rejected on either of these grounds. The committee of the whole found that, in their judgment, they were not valid bids, and not made in accordance with law and the ordinance; that they were not accompanied by a valid bond, properly conditioned, and were not made in good faith, and that there was collusion and bad faith in the proposition and presentation of said bids of said Johnson and Cobb. Whether or not the board would be ■ authorized in any case to reject a bidón the ground of “bad faith,3 ’ we do not find it necessary to decide in this case, for the bad faith claimed in this case is what is shown by facts above set forth, and which are contained in the words and figures of the bids and the bonds.
The Legislature, in granting to municipalities the right to grant these valuable rights to individuals and corporations, has been very particular to guard the rights of the citizens, and it has endeavored to make the burden as light as possible upon them by declaring that no grant shall be given except to the person agreeing to carry passengers at the lowest rates of fare-. No discretion was placed in any council or board in regard to this matter. The contract must be awarded to the lowest bidder, ■ and to him alone. The wisdom of the Legislature in making this provision is apparent. These franchises are frequently of great value and much sought after by capitalists.. If any other than the lowest bidder might be awarded the contract, a grievous burden might be imposed upon the people, lasting for a period of twenty-five years, with a probability of a renewal at the -expiration of that time for a further period.
*540 The Legislature, having so unmistakably expressed itself as to who should be awarded contracts of this character, we think it was the duty of the board to very carefully consider and weigh all facts connected with bids which were so much lower than others before rejecting them on the ground of in-formalities.
The main thing for the people, and the main thing in the eye of the law, was that the contract should be awarded to the lowest bidder. And we think it a correct rule not to draw too fine a sight on the informalities in the lowest bid. And if such matters do not clearly go to the very substance of the bid, they should be disregarded.
This brings us to a consideration of the informalities claimed to exist in the bids of Cobb and Johnson, for these' bids were both much lower than the bid of Johnson and the' other defendants — the bid of Cobb being the lowest of all, and about forty per cent, lower than Johnson’s. This difference was of vast importance to the people, as it would certainly, in the twenty-five years the contract had to run, amount to thousands of dollars.
Both Cobb and Johnson were well known to the board of legislation. They were known to be sui juris, and citizens. They claimed to be bidders. Their bids were to the point and nothing frivolous about them. There was absolutely nothing to indicate that their bids were sham bids, or false bids. They pertained to the subject matter; they were intelligible, and came up to the requirements of the ordinance and the advertisement.
Each furnished with his bid a bond. The bonds on their face were admittedly good; that is to say, as bonds they were good. They .were signed by citizens sui juris, of known financial ability, given in the required amount to the proper person, properly executed. The only question raised to them was a legal one, viz: whether, in law, the obligors could be held for the default of the bidder, if he *541 should not, within ten days, enter into a bond of $50,000 for the completion of the work. ■ The corporation counsel reported to the board that the bids and bonds were informal,, and the board found that they were invalid, and not in accordance with the ordinance and the law, and were made in bad faith, and that there was collusion in the preparation of the bonds.
But the invalidity, the informality, bad faith, and the want of compliance with the law and ordinances found by the corporation counsel and the board of administration, resulted from the fact that the bonds of the parties were in law invalid. Is this true?
The bid of Orris P. Cobb was as follows:
4 4 To. the Board of Administration of Cincinnati, Ohio:
“Proposals to construct and operate Street Railroad Route No. 25.
“The undersigned hereby proposes for himself and associates to construct and operate Street Railroad Route No. 25d under and. in accordance with the provisions of ordinance No. 418, establishing said route, for the followin rates of fare, to-wit:
“A single cash fare, three cents, etc. * *
“And the undersigned accompanies this bid with his bond as below written.
“Very respectfully,
“Orris P. Cobb.”
The bond is as follows:
“Know all men by these presents, that we, the undersigned, are held and firmly bound to the City of Cincinnati in the sum of twenty-five thousand dollars ($25,000) as liquidated damages.
“The condition of this is that the above-named Orris P. ''Cobb, bidder for the right to construct and operate Street Railroad Route No. 25, under ordinance No. 418, will, if awarded the said grant to construct and operate said road, enter into a contract therefor within ten days from and after the passage of the ordinance granting such right and give *542 bond for its faithful performance as provided in said ordinance. And, upon full performance of said condition, this obligation. shall be void, otherwise to remain in full force and effect.
: ‘ Witness our hands and seals this third day of March, A. D. 1893.
“Orris P. Cobb,
“Tilden R. French,
“Thomas J. Chapman.”
What we have to say in regard to the foregoing bid and bond would apply in like manner to the bid and bond of Simeon M. Johnson, for, in effect, they are alike; so much so, in fact, that both the corporation counsel' and the board of administration found there was collusion between them, to which matter reference will be made further along.
The point of contention is, that while the bond is conditioned that Orris P. Cobb, bidder, shall do certain things, Orris P. Cobb was not alone the bidder, but Orris P. Cobb and associates were the bidders, and the bond would not cover any default on this, bid, because the default, if any, would be the default not only of Cobb, but of his associates.
In pur judgment, the position taken by the board of administration was not correct. The bid, as we look at it, as between the bidder and the board, was simply the bid of Orris P. Cobb. The “undersigned” (Orris P. Cobb) is the bidder, and the only bidder, and to him, and to him alone, did the board have any right to look. He represents that he is the bidder, and says he is bidding for himself and associates, who, if any there were, are not disclosed, and the board had a perfect right to disregard this altogether, and look to Cobb alone, for he alone was bidding. Whether Cobb might not have a claim against his !! associates, ’ ’ or they a claim against him, arising out of their bid, could not arise on the bid, for the associates were not bidding. Their rights, if there were any, must have been- fixed by some other agreement. In this bid, it.- seems to us clear *543 that Cobb alone holds himself out to the board as the bidder.
If our view of this matter is correct, it puts an end to the controversy on this controlling point, for the bond is admittedly a good bond in all respects, if Orris P. Cobb was the bidder.
The corporation counsel called attention to the fact that the bonds of Johnson and Cobb were similar, and in his opinion must have been written by the same person. And the board of administration found from this fact and other circumstances that there was collusion between these bidders.
Admitting that the bid of Cobb (the lowest bid of all) was in due form, and that his bond was a good bond, and that his bond was nearly forty per ceut. lower than the bid of the defendants Johnson and others, how can the charge of collusion prejudice it ? Jolmson and his associates might have cause for complaint, but what complaint can the people make when the so-called collusion results in benefiting them? What the people want, and what under the law they are entitled to, is the lowest rates of fare, and if bidders will combine to give them this, they should not complain. There is a well known doctrine of collusion among bidders, but it has no application to facts like these; besides this, the mere similarity of bonds would hardly seem to justify the finding made.
It follows that if we are correct in our view, that the bid of Cobb was correct in form, and that his bond properly secured his bid, the board of legislation had no right to reject his bid, it being the lowest, and award the contract or grant to a much higher bidder; and therefore an injunction should be granted, as prayed for in plaintiff’s petition, restraining the board of administration and the City of Cincinnati from granting to the defendants Johnson and *544 others, the contract to construct and operate said Railroad Route No. 25.
Wm. C. Comptan, for City,
Harmon, Colston, Goldsmith & Hoadly. Ramsey. Maxwell & Ramsey, and Wallace Burch, for Johnson & Cobb.
Russell & Wilcox, for Á. L. Johnson et al.